RECORD NUMBER: 16-1854

# United States Court of Appeals

*for the*

# Fourth Circuit

TAJA INVESTMENTS LLC; TAJA CONSTRUCTION & REHAB, INC., a/k/a Taja Construction LLC,

*Plaintiffs/Appellants,*

– v. –

PEERLESS INSURANCE COMPANY, a/k/a Liberty Mutual Insurance Company,

*Defendant/Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA

# OPENING BRIEF OF APPELLANTS

C. Thomas Brown
Erik B. Lawson
SILVER & BROWN
10621 Jones Street, Suite 101
Fairfax, VA 22030
(703) 591-6666

*Counsel for Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __16-1854__        Caption: __Taja Investments, LLC, et al. v. Peerless Insurance Company__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Taja Construction & Rehab, Inc. a/k/a Taja Construction LLC__
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                                    ☐ YES ☑ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                                    ☐ YES ☑ NO
      If yes, identify all such owners:

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? ☐YES ☑NO
If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ C. Thomas Brown         Date: August 3, 2016

Counsel for: Appellant

## CERTIFICATE OF SERVICE
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I certify that on   August 4, 2016   the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Roman Lifson, Esquire
E. Ford Stephens, Esquire
Christian & Barton, LLP
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095

/s/ C. Thomas Brown         August 4, 2016
(signature)              (date)

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __16-1854__     Caption: __Taja Investments, LLC, et al. v. Peerless Insurance Company__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Taja Investments LLC__
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.   Does party/amicus have any parent corporations?                            ☐YES ☑NO
     If yes, identify all parent corporations, including all generations of parent corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                        ☐YES ☑NO
     If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ C. Thomas Brown _____    Date: _____August 4, 2016_____

Counsel for: Appellant _____

## CERTIFICATE OF SERVICE
****************************

I certify that on ___August 4, 2016___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Roman Lifson, Esquire
E. Ford Stephens, Esquire
Christian & Barton, LLP
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095

/s/ C. Thomas Brown _____         _____August 4, 2016_____
        (signature)                                          (date)

- 2 -

# TABLE OF CONTENTS

Corporate Disclosure Statements

Table of Authorities ................................................................................ iii

Introductory Statement ............................................................................ 1

Jurisdictional Statement .......................................................................... 2

Statement of the Issues ........................................................................... 2

Statement of the Case ............................................................................. 4

    A. Nature of the Case ........................................................................ 4

    B.  Statement of Material Facts Upon Which There is No Genuine Dispute ...... 5

Summary of Argument ............................................................................ 16

The Standards of Review on Appeal ....................................................... 22

    A.    The Standard of Review With Respect to Appeals From the
United States District Court to the Courts of Appeal for
Judgments Granting and/or Denying Motions for Summary
Judgment is De Novo ........................................................ 22

    B.    The Standards With Respect to the Grant or Denial of Motions
for Summary Judgment Are Governed By Federal Rule of Civil
Procedure 56 .................................................................... 22

    C.    Choice of Law:  The Laws of the District of Columbia Apply ......... 23

Argument.................................................................................................. 25

    I.    The Following General Legal Principles And Statutes When
Applied To The Facts Of This Case Show That The Granting
Of Summary Judgment In Favor Of The Plaintiffs Is
Appropriate....................................................................... 25

II.    The Law Regarding "All Risk" Policies Of Insurance ...................... 28

III.   Since There Was No Movement Of Soil At The "Earth's Surface," The Earth Movement Exclusion Is Inapplicable ............... 30

IV.    The Faulty Workmanship Exclusion Does Not Apply Since The Actual Cause Of The Collapse Is Not Known By Peerless Which Cannot Meet Its Burden Of Proving The Cause .................... 38

V.     Peerless' Assertion That The Faulty Workmanship Clause Excludes Coverage, Ignores The Ensuing Loss Clause .................... 41

Conclusion ................................................................................... 47

Statement Regarding Oral Argument .................................................. 48

Certificate of Compliance

Certificate of Service

ii

# TABLE OF AUTHORITIES

## Cases

American Reliance Ins. Co. v. Mitchell,
    238 Va. 543, 385 S.E.2d 583 (1989) ............................................................. 26, 33

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986) ................................................................................. 22, 23

Arcon Corp. v. Liberty Mut. Ins. Co.,
    591 F.Supp. 15 (M.D.Tenn.1983) ...................................................................29

Ayers v. Harleysville Mutual Casualty Co.,
    172 Va. 382, 2 S.E.2d 303 (1930) ...................................................................25

Bituminous Cas. Corp. v. T.A. Sheets,
    389 S.E.2d 696 (Va. 1990) ..............................................................................39

Bituminous Casualty Corporation v. T.A. Sheets,
    239 Va. at 332, 389 S.E.2d 696 (1990) ........................................................ 12, 26

Cameron v. USAA Prop. & Cas. Ins. Co.,
    733 A.2d 965 (D.C. 1999) .................................................................... 12, 26, 39

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986) .........................................................................................23

Centennial Broad., LLC v. Burns,
    Case No. 6:06cv00006, 2006 WL 2850640, 2006 U.S. Dist. LEXIS 70974
    (W.D.Va. Sept. 29, 2006) .................................................................................32

Charbonnages de France v. Smith,
    597 F.2d 406 (4th Cir.1979) ............................................................................22

Clay v. Sun Ins. Office, Ltd.,
    363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170 (1960) .........................................29

D.C. McClain, Inc. v. Arlington Cnty.,
  249 Va. 131, 452 S.E.2d 659 (1995) ...................................................32

Fed. Ins. Co. v. Olawuni,
  539 F. Supp. 2d 63 (D.D.C. 2008)......................................................35

Fidelity and Guaranty Insurance Underwriters, Inc. v. Allied Realty Co.,
  238 Va. 458 (1989) ..............................................................................45

Firemen's Insurance Company of Washington, D.C. v. Kline & Son Cement
  Repair, Inc., et al.,
  474 F.Supp.2d at 798 (2007) ...............................................................32

Fuisz v. Selective Ins. Co. of Am.,
  61 F.3d 238 (4th Cir. 1995) .................................................................39

Granite State Insurance Company, et al v. Nathan Bottoms, et al.,
  243 Va. at 233, 415 S.E.2d 131 (1992) ...............................................33

Graphic Arts Mutual Ins. Co. v. C.W. Warthen Co.,
  240 Va. 457, 397 S.E.2d 876 (1990) ...................................................25

Highway Exp. Inc. v. Fed. Ins. Co.,
  19 F.3d 1429 (4th Cir. 1994) ...............................................................23

Icarom, PLC v. Howard County, Md.,
  981 F.Supp. 379 (D.Md., 1997)...........................................................29

Ins. Co. of N. Am. v. U.S. Gypsum Co.,
  678 F. Supp. 138, 141 (W.D. Va. 1988) *aff'd sub nom.* Ins. Co. of N. Am., Inc. v.
  U.S. Gypsum Co., Inc., 870 F.2d 148 (4th Cir. 1989) .........................28

Jefferson-Pilot Fire & Casualty Company v. Boothe, Prichard & Dudley,
  638, F.2d 670, 674 (1980) ...................................................................25

Joseph P. Bornstein Ltd. v. National Union Fire Ins.,
  828 F.2d 242 (4th Cir.1987) ......................................................... 26, 35

Klaxon Co. v. Stentor  Elec. Mfg. Co.,
  313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) ...........................23

Lang v. F.G. Arwood & Co.,
    65 A.2d 194 (D.C.1949) ...................................................................26

Miller v. Leathers,
    913 F.2d 1085 (4th Cir.1990), cert. denied, 111 S.Ct. 1018 (1991) ...................23

Mollenauer v. Nationwide Mut. Ins. Co.,
    214 Va. 131, 198 S.E.2d 591 (1973) ...................................................36

Nationwide Mut. Ins. Co. v. Overlook, LLC,
    785 F. Supp. 2d 502 (E.D. Va. 2011) ..................................................32

New York Life Ins. Co. v. Miller,
    65 App. D.C. 129,  81 F.2d 263 (D.C.Cir.1935) ......................................26

Powell v. Liberty Mut. Fire Ins. Co.,
    127 Nev. 156, 252 P.3d 668 (2011)................................................ 36, 37

Resource Bankshares Corp. v. St. Paul,
    407 F.3d 631 (4th Cir.2005) ...........................................................26

Salzi v. Virginia Farm Bureau Mut. Ins. Co.,
    263 Va. 52, 556 S.E.2d 758 (2002) ...................................................36

Seabulk Offshore Limited v. American Home Assurance,
    377 F.3d 408 (4th Cir. 2004) .........................................................24

Selective Way Ins. Co. v. Nat'l Fire Ins. Co. of Hartford,
    988 F. Supp. 2d 530 (D. Md. 2013) ...................................................45

Sentinel Associates v. American Manufacturers Mutual Insurance Company,
    804 F.Supp 815 (1992) ................................................................39

Sentinel Associates v. American Mfrs. Mut. Ins.,
    804 F.Supp. 815 (E.D.Va.1992) .......................................................37

Smalls v. State Farm Mut. Auto. Ins. Co.,
    678 A.2d 32 (D.C.1996) ...............................................................27

v

St. Paul Ins. v. Nusbaum & Co.,
   227 Va. 407, 316 S.E.2d 734 (1984) .......................................................... 26, 35

Stephen Randolph Seals v. Erie Insurance Exchange,
   277 Va. 558, 674 S.E.2d 860 (2009) ..................................................................26

United States Mut. Accident Ass'n of the City of New York v. Hodgkin,
   4 App. D.C. 516 (1894), *error dismissed,* 17 S.Ct. 1002, 41 L.Ed. 1184 (1897) 27

Vision One, LLC v. Philadelphia Indem. Ins. Co.,
   174 Wash. 2d 501, 276 P.3d 300 (2012) ....................................................... 29, 45

Wilson v. Holyfield,
   227 Va. 184, 313 S.E.2d 396 (1984) .......................................................... 25, 31

Winn v. Aleda Const. Co., Inc.,
   227 Va. 304, 315 S.E.2d 193 (Va.,1984) ...........................................................25

Woodson v. Celina Mut. Ins. Co.,
   211 Va. 423, 177 S.E.2d 610 (1970) .................................................................24

**Rules and Statutes**

28 U.S.C. § 1291 ...................................................................................................2

28 U.S.C. § 1332(a) ..............................................................................................2

28 U.S.C. § 1441 ...................................................................................................2

Fed.R.Civ.P. 30(b)(6)........................................................................................9, 33

Fed.R.Civ.P. 56(c)...........................................................................................5, 22

## INTRODUCTORY STATEMENT

This appeal seeks a *de novo* review of the trial court's interpretation and construction of language contained in a builder's risk insurance policy issued by the Defendant Peerless Insurance Company, a/k/a Liberty Mutual Insurance Company (hereinafter either "Peerless" or the "Insurer") to the Plaintiffs, Taja Construction & Rehab, Inc., a/k/a Taja Construction and Taja Investments, LLC ("Taja" or "Plaintiff").   In its decision, the United States District Court for the Eastern District of Virginia (Alexandria Division)(Hon. Gerald B. Lee) misquoted the operative policy language, misconstrued the plain language of the insurance policy as written and read into the policy additional language that was not contained within the policy, the combination of which resulted in the Court's erroneously granting of summary judgment in favor of Peerless and erroneously denying summary judgment to Taja on Taja's claim for insurance coverage for a covered loss under the express terms of the insurance policy.  It is the Plaintiff's contention that but for the Court's mis-citation, misinterpretation and misconstruction of the policy language that the Plaintiff would have been entitled to summary judgment as a matter of law.

For the reasons set forth below, the Plaintiff seeks to have this Court reverse the decision of the lower court entered on July 21, 2016 and enter judgment in favor of Plaintiff as a matter of law.   Alternatively, if this Court believes that Summary Judgment is inappropriate, the Plaintiff would request that the decision of the trial

court be reversed and the case remanded for further proceedings. References within this Brief to the Appendix will be denoted as "J.A._, p.    ".

## JURISDICTIONAL STATEMENT

This is an appeal of a final order of the United State District Court for the Eastern District of Virginia (Alexandria Division) entered on July 21, 2016 granting summary judgment in favor of the Defendant, Peerless Insurance Company and denying summary judgment to the Plaintiffs, Taja. A timely Notice of Appeal was filed by the Plaintiff as required by the Federal Rules of Civil Procedure. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §1291.

The United State District Court for the Eastern District of Virginia (Alexandria Division) had jurisdiction over the underlying action under 28 U.S.C. §1332(a) following its removal from state court pursuant to 28 U.S.C. 1441 as the matter in controversy exceeded the sum or value of $75,000, exclusive of interest and costs and was between citizens of different States.

## STATEMENT OF THE ISSUES

(i)      Whether the District Court erred in denying summary judgment as a matter of law in favor of the Insured, Taja, for damages insured against in the builders' risk policy resulting from a covered loss, to wit; the collapse of the insured building, property damage due to negligence, or covered earth movement below the surface of the earth.

(ii)    Whether the District Court erred in granting summary judgment in favor of Peerless and against Taja by finding that the loss was excluded from coverage because it was excluded as "Earth movement" under the policy, in contravention to the language of the policy which specially defined Earth movement to not include movement of soils below the earth's surface and in the face of undisputed evidence that the loss resulted from earth movement below the earth's surface and therefore was not excluded from coverage.

(iii)    Whether the District Court erred in granting summary judgment in favor of Peerless when it ruled that the excavation of the basement was barred as an "an act, defect, error, or omission (negligent or not) relating to . . . construction or workmanship" and by failing to recognize coverage when a "loss by a covered peril (the collapse or the movement of soil below the surface of the earth) resulted" that such resulting loss is covered under the policy.

(iv)    Whether the District Court erred in failing to apply the policy as written by Peerless, and instead reading language into the policy where none existed resulting in the denial to the Plaintiff of its insurance coverage.

(v)    Whether the Court's citation, construction and interpretation of the builder's risk policy was plainly wrong thereby resulting in the Court erroneously granting summary judgment to Peerless and failing to grant summary judgment to Taja.

(vi)    Whether the Court failed to consider the ambiguities in the policy and construe the ambiguities in the insurance policy in favor of coverage.

## STATEMENT OF THE CASE

### A.    NATURE OF THE CASE:

This case arises out of Peerless' denial of Taja's first party insurance claim under a builder's all risk policy (the "Policy") following the collapse of a row house that Taja Investments, LLC owned and was renovating.  The collapse occurred at some point in time after Taja Contraction completed the excavation of a 9-foot deep basement in the building as part of the overall renovation project. As all workmen had left the property there were no eyewitnesses to the time or mode of collapse.

 Peerless, in denying the claim, took two positions that it has maintained throughout these proceedings.   The first position taken was that although this was an "All Risk" policy and that ordinarily the loss would be a covered loss, the Policy contained an "Earth movement" exclusion that barred coverage even in the case of a concurrent or sequential covered loss.  The second position taken by Peerless was that the Policy contained a Defects, Errors or Omissions exclusion and that this loss was excluded as consisting of bad or defective workmanship and that no loss ensued from that bad workmanship.[1]

---

[1] In discovery Peerless agreed these were the only two exclusions applicable.

Following Peerless' denial of Taja's claim, Taja brought suit in the Circuit Court of Fairfax County, Virginia against Peerless which was then removed to the United States District Court for the Eastern District of Virginia (Alexandria Division) based on diversity jurisdiction. Following discovery, the Plaintiff, Taja, brought a Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Defendant thereafter filed a Cross Motion for Summary Judgment. Following briefing and argument, the District Court on July 21, 2016 entered judgment in favor of Peerless on its Cross Claim for Summary Judgment and denied Taja's Motion for Summary Judgment. This appeal followed.

## B. STATEMENT OF MATERIAL FACTS UPON WHICH THERE IS NO GENUINE DISPUTE

Taja Investments LLC ("Taja Investments") is a Maryland limited liability company that owned a row house located at 117 New York Ave, NW, Washington, DC, 20001 ("Property" or "Subject Property" or "Row House") that is located within an historic area in the District of Columbia. Taja Construction & Rehab, Inc. ("Taja Construction") is a Maryland limited liability company that was engaged to renovate the Row House.

The Row House was in contact with another row house to the east and shared a party wall with the row house to the west. The Row House was to be renovated by Plaintiffs and included the excavation of an existing crawl space and a shallow 4-5 foot basement to a depth of approximately 9 feet to allow the

creation of additional living areas.[2]  Taja had performed other underpinning

projects in the same manner as it had undertaken in this case without incident.[3]

The excavation is best shown on portions of the plans which plans are blown up

and part of the set of plans used in the construction.[4]  The plans at <u>J.A. 4 E 1413

and E 1415</u> show the excavation further show the area where the soil moved

leading to the collapse of the east wall of the building.  Larger versions are

attached hereto as at J.A. 4, p 1413 – p 1419.

---

[2]      Watson Deposition at J.A. 2, p. 693.

[3]      See Affirmation of Watson at J.A. 4, p.1306.

[4]      See blow ups at J.A. 4, p. 1420 being the full set of plans, p. 1414 showing the front of the building, taken from the plans known as sheet Elevation 1, p. 1415 showing the rear of the building where the collapse occurred, taken from sheet Elevation 1; and p. 1417 showing blow ups in which the plans show the "earth" and the "grade."



There is no dispute as to the sequencing of the project. The first work of the renovation was removal of the back wall and excavation of the basement. The next steps anticipated underpinning, and then building of an addition, followed by interior renovation.

The collapse occurred on June 10, 2014 when the east wall of the building failed and collapsed into the excavated area in the newly excavated basement.[5] At the time of the loss, no one was on site and no operations were being actively

---

[5]      J.A. 1, p 147.

performed.[6] The collapse occurred after excavation had taken place to install a 9

foot deep basement, but before any underpinning activity had occurred.[7]

While there is a dispute over what the actual trigger of the collapse was, it is

not disputed that the collapse happened when no work was being done at the

Property when the east wall of the building failed causing the collapse of the east

wall into the basement.[8]   The collapse was caused by, or contributed to by (1) over

excavation of the basement, which excavation was too close to the soil below the

walls;[9] (2) and the movement of subsurface earth below the basement walls.[10]

---

[6]    Watson Deposition, J.A. 2, p. 692, page 74; Wilson Deposition, J.A. 1, p. 289 page 33.

[7]    Watson Deposition, J.A. 2, p. 692, page 82.

[8]    See J.A. 1, p 289, pages 31-32.  See Watson deposition at J.A. 2, pages 79-80; See J.A. 1, p. 146, letter from Zachary Kates of Thornton Tomasetti, the engineer hired by Peerless at pages 1 and 2 under heading "Description of Loss and Observed Damage."

[9]    See J.A. 1, p. 155 Report from Zachary Kates of Thornton Tomasetti, the engineer hired by Peerless page 4 under "Discussions of Findings"; Deposition of Brian Brown, J.A. 2, p. 453, pages 16-17.

[10]    Dennis Anibaba, J.A. 1, p. 355, at page 36, see also J.A. 1, p. 155, report from Zachary Kates of Thornton Tomasetti, the engineer hired by Peerless at pages 4 under Discussions of Findings ("the entire basement was excavated at once . . . the excavation was performed almost flush with the face of the wall and extended below the bottom of the base of the wall. . this left the portion of the soil below the wall and adjacent to the excavation in unstable condition.  It is our opinion that the soil below the wall failed  . . . leading to the loss of wall support and the partial collapse as observed.").

## 1. Witness Testimony:

All witnesses are in agreement that to the extent that earth movement had anything to do with this loss, that the soils that moved were not at the earth's surface, but were below surface grade. Subsurface earth is unambiguously a covered peril under the policy. The testimony was as follows:

• **Peerless FRCP 30(b)(6) representative Jonathan Lawlee**, testified that the insurer was "not aware of any movement of the soil at the **surface of the earth**" and that the earth movement "happened under the wall" and that the movement of earth was all "below the grade."[11] Such a party admission is fatal to its argument that there was movement at the earths surface.

• **Jonathan Kates**, the expert for Peerless, testified that there was no movement at the surface of the earth and that all the soil movement occurred below grade.[12]

• **Michael Watson**: Mr. Watson is the principal of Taja came to the site just after the wall failure had occurred and testified that everything related to the excavation was below grade and below the surface of the earth.[13] See also the affirmation of Michael Watson filed along with the Opposition to Peerless Motion for Summary Judgment.

• **Brian Brown**: Mr. Brown is the principal of Nextgen and the owner of the adjoining property who came to the site just after the wall failure had occurred and testified that: the dirt that moved was 100% below grade, there was nothing above

---

[11] See deposition of Peerless Insurance Company taken pursuant to FRCP 30(b)(6) with Jonathan Lawlee as the deponent, J.A. 2, p. 692 at pages 51-53.
[12] Zachary Kates, J.A. 2, p. 497 at page 57.
[13] Michael Watson J.A. 2, p. 692 at pages 78-79

grade the brick in the entire house was below grade, and the dirt they removed was below grade.[14]

- **Dennis Anibaba**: the engineer who drew up the plans and who came to the site just after the wall failure had occurred testified that:  The excavation that was taking place was all below the existing grade, and that the dirt that moved underneath the footers and that it was all below the surface of the earth.[15]

The testimony is uncontroverted that there was no movement at the surface of the earth.  A claim was made on Peerless for the loss and damage resulting from the wall failure, which claim was denied by Peerless on February 17, 2015.  See J.A. 1, p. 278.  Peerless' denial is limited to the insurer's assertion of:

> (i) the exclusion for Earth Movement or Volcanic Eruption found at paragraph 1 (b) of the Perils Excluded in the Policy (the "*Earth Movement Exclusion*").  See J.A. 1, p. 60 at bates page 73, which is limited by the definition of Earth movement at J.A. 1, p. 127 at bates 67.; and

> (ii) the exclusion for Defects, Errors, and Omissions found at paragraph 3(b) of the Perils Excluded in the Policy.  (the "*Faulty Workmanship Exclusion*")  See J.A. 1, p. 60, bates page 75-76. [16]

### 2.    *The Relevant Portions of the Builder Risk Insurance*

Taja obtained All Risk Insurance Policy from Peerless to cover the property.  The policy was obtained through an agency in Virginia.  The policy covered both the Subject Property and other properties owned by Taja located in Maryland and the

---

[14] Bryan Brown, J.A. 2, p. 453 at page 32.

[15] Dennis Anibaba, J.A. 1, p. 355, at pages 52-53.

[16] See response to Requests for Admission at J.A. 1, p. 171, response to request no. 6.

District of Columbia.  The Policy insuring the Insured Property provided $300,000 coverage limits for the renovations and $375,000 limits for the existing building for a "Total Limit" of insurance for the Subject Property of $675,000 (the "Policy").  The Policy provides in pertinent part as follows:

---

### PERILS COVERED

---

"We" cover risks of direct physical loss unless the loss is limited or  caused by a peril that is excluded.  See J.A. 1, p. 60, at bates page 73.

This insuring clause makes the policy "all risk" because it covers all risks of direct physical loss unless it is expressly excluded.

In addition to being an all risk policy, the Policy also contains an express grant of coverage for builders risk losses.  Unlike many builders' risk policies that specifically exclude existing buildings, the following grant of coverage is found in the "Rehabilitation and Renovation Endorsement."

Rehabilitation and Renovation -- "We" cover direct physical loss caused by a covered peril to buildings and structures described on the "schedule of coverages" while in the course of rehabilitation or renovation including additions, alterations, improvements, or repairs. This includes materials and supplies which will become a permanent part of the buildings and structures, attachments, and permanent fixtures.

Under the above coverages the loss and damage sustained by Taja is covered under this policy unless Peerless can carry the burden of proving the application of an exclusion.

11

Peerless relies on two exclusions.[17]  Peerless contends that the loss is excluded under the (1) Earth Movement Exclusion, and (2) the Faulty Workmanship Exclusion, each of which are found within a different section of the policy.

The Earth Movement Exclusion is among the broadest exclusions found within the Exclusion section of the policy at ¶ 1(b) under Perils Excluded, when compared to the exclusions found under paragraphs 2 and 3.  The lead-in language to the paragraph 1 exclusions contains "anti concurrent causation" language making the exclusion broad.  It provides as follows:

---

### PERILS EXCLUDED

---

1. "We" do not pay for loss or damage caused directly or indirectly by one or more of the following excluded causes or events. *Such loss or damage is excluded regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.*

*    *    *

    **b.  Earth Movement or Volcanic Eruption** -- "We" do not pay for loss caused by any "earth movement" (other than "sinkhole collapse") or caused by eruption, explosion, or effusion of a volcano. . . . (emphasis added to highlight the anti concurrent causation language).

---

[17] To the extent that Peerless relies on exclusory language, it bears the burden of proving the exclusion applies, and facts necessary to trigger the exclusion, neither of which burden it can meet.  the burden is upon the insurer to prove that the exclusion applies to the facts of the case."  See <u>Cameron v. USAA Prop. & Cas. Ins. Co.</u>, 733 A.2d 965 (D.C. 1999); <u>Bituminous Casualty Corporation v. T.A. Sheets</u>, 239 Va. at 332, 389 S.E.2d 696 (1990).

Under the above definition "earth movement" is a term of art defined in the policy.
The exclusion cannot be applied without reference to the definitional section of the
Policy.  The Policy in the insuring clause provides in part that:

> Refer to Definitions for words and phrases that have special meaning.
> These words and phrases are shown in quotation marks or bold type.

The earth movement exclusion contains a word with special meaning as the term:
"earth movement" is in quotation marks and the following special definition applies:

---

## DEFINITIONS

---

"Earth movement" means any movement or vibration of the
**earth's surface** (other than "sinkhole collapse") including but not
limited to earthquake; landslide; mudflow; mudslide; mine
subsidence; or sinking, rising, or shifting of earth. (Emphasis
Supplied).[18]

By definition, "earth movement" is limited to "movement or vibration of the earth's
surface."  Movement which is not at "the earth's surface" is not "earth movement" for
purposes of the policy exclusion.

In this case since there was no movement or vibration "of the earth's surface"
there was not "earth movement" as defined by the policy and therefore no excluded
earth movement under the policy exclusion.  Moreover, to the extent that the term
"earth's surface" is ambiguous, such ambiguity will be construed against Peerless and
in favor of coverage.  The trial Court erred in reviewing other earth movement cases

---

[18]     See  J.A. 1, p. 60, at bates page no. 67.

which construing policies which did not have the restrictive definition of earth movement of this case and are therefore inapposite. Instead the Court using one of several definitions of "surface" found that while the movement was below the ground level, that the surface of the earth means the uppermost layer of soil and clay. The definition adopted by the Court makes the exclusion text book ambiguous. If movement at the "uppermost layer of soil and clay" is excluded, how far down does the "uppermost layer" go? Is it 4 feet? Is it 10 feet? Is it something else? Of course, Peerless, who drafted the policy, could have cleared up the ambiguity, but it chose not to do so and this ambiguity must be construed against it.[19]

The Faulty Workmanship Exclusion found at paragraph 3(b) of the Perils Excluded[20] is subject to lead in language that does not contain anti concurrent causation language and is much narrower than the lead in language for sections 1 or 2 of the exclusions. Each of the third tier exclusions has a carve out, which adds coverage back to the Insured. It states that " . . . if loss by a covered peril results, "we" do pay for the resulting loss." The Faulty Workmanship Exclusion provides as follows.

---

[19]    At another part of the policy Peerless did in fact employ an exclusion for water movement "under the ground surface." The fact that Peerless expressly chose such language elsewhere in the policy, suggests that something different must have been meant when it used the terms "at the earth's surface." When the policy is read as a whole, Peerless cannot reasonably argue that "at the earths surface" also means "under the ground surface" as the trial court apparently believed. Such was error.

[20]    See J.A. 1, p. 60, at bates page no. 75-76.

3. "We" do not pay for loss or damage if one or more of the following exclusions apply to the loss. **But if loss by a covered peril results, "we" do pay for the resulting loss.**

\*        \*        \*

b.  Defects, Errors, and Omissions -- "We" do not pay for loss caused by an act, defect, error, or omission (negligent or not) relating to:

1)  design, specifications, construction, or workmanship;

2)  planning, zoning, development, siting, surveying, grading, or compaction; or

3)  maintenance, installation, renovation, remodeling, or repair.

Application of the Faulty Workmanship Exclusion requires one to separate the actual faulty workmanship (which is not covered) from any ensuing or resulting covered peril (which is covered).  Since all risks of loss are covered unless excluded, once a loss by a resulting peril has occurred, the burden is on the Insurer to demonstrate that the resulting loss is also excluded.  Here, the over-excavation of the basement (the alleged faulty workmanship) is the alleged excluded peril.  However to the extent the excluded act (the over excavation of the basement) lead to a covered peril the subsurface earth movement or collapse of the wall, the loss is covered.  No exclusion applies to either subsurface earth movement or collapse.

The resulting collapse of the East wall and the damage to the building following that collapse is covered since the Policy contains no exclusion for collapse or for

subsurface earth movement.  See Policy at J.A. 1, p. 60, Exclusions found at pages 73-76.  (See also testimony of Peerless corporate designee Jonathan Lawlee at J.A. 2, p. 572 at page 86 acknowledging that there is "No there is no collapse exclusion" in the Policy).  The Court erred when it read into the policy the requirement that the resulting peril must be "independent and covered peril.[21]"  Here, the policy included the Peerless agreement that "if loss by a covered peril results, "we" do pay for the resulting loss" without any further qualification.  Moreover, the Court erred because in this case the resulting perils (subsurface earth movement and/or collapse) even if they were the result of the workmanship, were independent and subsequent in time to the excavation itself.  This is why the collapse did not occur during the actual excavation, but at some point later in time, and is also why on at least 8 other projects the same excavation had been undertaken by Taja without any loss.  The loss was not the workmanship itself, but the ultimate collapse of the building that occurred some time after the excavation was completed.

## SUMMARY OF ARGUMENT

In its written opinion granting summary judgment to Peerless and denying Taja's corresponding motion, the trial court ignored the plain Policy language and failed to comprehend that neither of the exclusions claimed by Peerless were applicable to this loss.  Had the Court properly applied the Policy language, Taja

---

[21]  Here the collapse is an independent covered peril in any regard.

16

would have prevailed on its claim and summary judgment would have been entered in its favor as a matter of law.

In its Cross Motion for Summary Judgment, Peerless took the position that Taja's claims were excluded by (i) the Earth movement exclusion of the Policy and (ii) by the defective workmanship exclusion of the Policy. The first position taken by Peerless ignored the Policy definition of Earth movement that only movement of the earth's surface was excluded. Here, there simply was **no** movement of the earth's surface as defined in the Policy. The earth movement relied on by Peerless in exercising the policy exclusion was not surface earth movement but instead occurred 8 to 9 feet below the surface of the earth and below a wall footer that had failed causing the wall to collapse into the basement excavation.[22]   Peerless' argument further ignored the fact that under the Policy the Insurer agreed to provide coverage for all risk of loss unless excluded. Thus, if the earth movement below the earth's surface was the cause of the loss then the entire loss was covered. Further, because collapse is a separate peril, and since it was not excluded, it was a resulting covered peril, establishing that the collapse is covered.

The policy is clear that the term "Earth movement" is a defined term with a special meaning that expressly does not mean any and all earth movement. The Policy plainly states, "[r]efer to Definitions for words and phrases that have special

---

[22] Taja had excavated 8 prior projects in the same manner without incident. No one was on site when the collapse occurred.

meaning.  These words and phrases are shown in quotation marks or bold type." The Policy defines "Earth movement" as ***"any movement or vibration of the <u>earth's surface</u> including but not limited to . . ." (Emphasis Supplied).***  This definition must be read to limit the exclusion and is dispositive of the entire case.

The District Court misquoted the policy exclusion, which may have influenced its decision:  Its opinion was premised on the grounds that the exclusion encompassed (as opposed to being defined as) "any movement or vibration of the **E**arth's surface." See p. 4 of the District Court's memorandum opinion ("emphasis added").  The erroneous capitalization of "Earth" is a distinction that matters.  The capitalized word Earth used by the District Court refers to the planet Earth[23], while the lower-cased earth in the Policy, plainly means "dirt".  Contrast p. 4 of the District Court's memorandum opinion with the definition of Earth movement in the Policy at Vol 1, E 127 at bates 67.  Then, the Court interpreted the words "Earth's surface," which does not appear in the policy, as meaning the planet Earth's "surface level" which it then held was the "uppermost layer" of the Earth. See p. 6 of District Court's memorandum opinion.  This interpretation is impermissible under well-settled insurance law and because the policy does not capitalize "Earth" in the context of the definition of "earth's surface."

---

[23] Earth, in the definition misquoted by the District Court, is a proper noun.

Here, the exclusion is inapplicable because it is undisputed that the only movement of dirt occurred 8-9 feet below the earth's surface.[24]  There is no exclusion applicable to subsurface earth movement nor movement "under the ground surface"; therefore, subsurface earth movement is an covered cause of loss under the all-risk policy.  It is also undisputed that the failure of the soil below the earth's surface led to a collapse of the building.  Notwithstanding the plain language that Peerless deliberately placed in its Policy, the Court incorrectly held that the term "the earth's surface" included, without any apparent limitation, all of the area below the surface of the earth.  Based on this rationale and its reading of additional language into the Policy exclusion, the Court erroneously found the exclusion to be applicable despite the absence of any evidence that there was movement or vibration at the **earth's surface**.

Alternatively, it was argued that the Policy was ambiguous as to what is meant by the "earth's surface".   While Plaintiff argued that "surface" means "surface" in the conventional dictionary sense, and no ambiguity existed, the Court apparently disagreed  and found that surface earth movement included any movement below the surface of the earth.  Plaintiff argued unsuccessfully that if such an ambiguity exists, it is construed against Peerless in favor of coverage.  While the better reading of the Policy is that the exclusion does not apply since there was no surface "earth

---

[24] Peerless expressly admitted this in deposition.

movement" as plainly defined by the Policy, even if the language is found to be ambiguous, under basic tenets of insurance law, the exclusion still would not apply as ambiguities within a policy are construed in favor of the insured to afford coverage to compensate the insured for the inequities inherent in the insurance business.[25] Accordingly, the Court's opinion on this issue was also erroneous.

In addition, the "earth movement" exclusion is ambiguous as to whether it applies to man made events of the type at issue.  Typically earth movement exclusions have been applied only to natural events and under the principal of *ejudem generis*, man made events would be excluded.  In this case the language of the earth movement exclusion as drafted by Peerless is ambiguous when applied to this loss since the policy is unclear as to whether it applies to events which are not naturally occurring. Because the exclusory clause is not sufficiently clear, it is to be construed against Peerless.  This result is supported by the fact that in other policies of insurance, Peerless has used language which is clear as to its application to events such as the one at bar.

Peerless also argued that the defective construction and workmanship exclusion in the Policy also excused payment of any part of the loss and defeated

---

[25] These inequities include (1) the legal fiction that deems insureds to have read their policies prior to agreeing to their terms, (2) the fact that insurers carefully draft policies in their favor utilizing teams of lawyers, and (3) that insurers are repeat players in the insurance litigation context and intentionally draft policies to account for changes to common law.

coverage.  The Court's holding with respect to this exclusion was also incorrect because the Defective Construction or Workmanship exclusion contains an exception to the exclusion which provided that even if failed economic expectations from defective construction or workmanship, regardless of negligence, is excluded from coverage because the insurer is not a guarantor of workmanship or materials, if a non excluded peril follows or results from the defective workmanship or construction such resulting loss is still covered.  The exception to the exclusion relied on contains a grant of coverage and states the following:

**But if loss by a covered peril results, "we" do pay for the resulting loss.**

Here, the alleged defective construction was the "over excavation" of the basement which undisputedly led to subsurface earth movement and the eventual collapse of the building.  Both the perils of subsurface earth movement and collapse are covered perils.  In this instance the Plaintiffs claim being made is limited to the damage resulting from the subsurface earth movement and collapse of the building, each Covered Perils which fit squarely within the exception to the Workmanship Exclusion.  Neither of those causes of loss were excluded in this particular builder's risk policy.  Thus, the Court erred by reading into the policy language excluding coverage for a resulting covered peril and by considering language that was not expressly or implicitly a part of the Policy.

## THE STANDARDS OF REVIEW ON APPEAL

**A.    The Standard of Review With Respect to Appeals From the United States District Court to the Courts of Appeal for Judgments Granting and/or Denying Motions for Summary Judgment is De Novo.**

The standard of appellate review for appeals from the United States District Courts to the Courts of Appeal where judgment is entered granting and/or denying Motions for Summary Judgment as in this case is *de novo*.

**B.    The Standards With Respect to the Grant or Denial of Motions for Summary Judgment Are Governed By Federal Rule of Civil Procedure 56.**

Because this is a *de novo* review of the grant or denial of Motions for Summary Judgment, the Court of Appeals is subject to the same legal requirements as are the Federal District Courts.  Accordingly, a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). See Charbonnages de France v. Smith, 597 F.2d 406 (4th Cir.1979).

A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the

nonmoving party. Id. at 255. The plaintiff is entitled to have the credibility of all its evidence presumed. Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir.1990), cert. denied, 111 S.Ct. 1018 (1991). The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The opposing party must demonstrate that a triable issue of fact exists; it may not rest upon mere allegations or denials. Anderson, 477 U.S. at 248. A mere scintilla of evidence supporting the case is insufficient. Id.  As cited in Highway Exp. Inc. v. Fed. Ins. Co., 19 F.3d 1429 (4th Cir. 1994).

## C.    Choice of Law:  The Laws of the District of Columbia Apply.

The substantive law of the District of Columbia applies to this matter.[26] Such law is not different from Virginia law on the issues presented.  A federal court having diversity jurisdiction, absent a controlling constitutional provision or act of Congress, is obliged to apply the substantive law of the state in which it sits, including the state's choice-of-law rules.  See Klaxon Co. v. Stentor  Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)  Under Virginia law, questions concerning the validity, effect, and interpretation of contracts are resolved according to the law of the state where the contract was made. Woodson

---

[26] While Peerless argues that Virginia law should apply, substantively there is no difference as the same general law concerning interpretation of insurance policies require this Court to conclude that the loss is covered under either Virginia law or the law applicable in the District of Columbia.

23

v. Celina Mut. Ins. Co., 211 Va. 423, 177 S.E.2d 610, 613 (1970) (applying

principle of *lex loci contractus*) as cited in Seabulk Offshore Limited v. American

Home Assurance, 377 F.3d 408, 418-419 (4th Cir. 2004)(looking to place of

delivery of contract as the last act necessary and establishing the choice of law).

Here, the Policy was delivered to the Plaintiff in the District of Columbia.[27]

Because the insurance policy was issued for delivery in the District of Columbia,

covered property located in the District of Columbia, and the events precipitating

the loss occurred in the District of Columbia, all questions concerning the validity,

effect and interpretation of the insurance policies are governed by the laws of the

District of Columbia law.  See  Seabulk, supra at 418-419.[28]

---

[27]    J.A. 2, pp 728-729.  While Peerless corporate representative Lawlee testified
that the Peerless underwriter did not send the policy to the insured in Washington
DC, he also admitted that he had been instructed by his counsel to testify to the
same, and had no other knowledge of where it was sent.  J.A. 2, pp 615-616.

[28]    To the extent Peerless argues that Virginia rather than D.C. law applies, as the
law of both jurisdictions are quite similar, it is a distinction without a difference.
Here, however, even if, as Peerless has previously asserted, that it delivered the policy
only to its agent in Virginia, under Virginia law in a dispute such as this, the agent is
deemed to be an agent of the insurer.   Therefore,  when the agent delivered the policy
to the Plaintiff, it did so as the agent of the insurance company, making delivery in the
District of Columbia the only effective delivery.  Accordingly, D.C. law and not
Virginia law would apply.
        .

# ARGUMENT

I.    **THE FOLLOWING GENERAL LEGAL PRINCIPLES AND STATUTES WHEN APPLIED TO THE FACTS OF THIS CASE SHOW THAT THE GRANTING OF SUMMARY JUDGMENT IN FAVOR OF THE PLAINTIFFS IS APPROPRIATE.**

**Construction of the Policy**:  The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used. Graphic Arts Mutual Ins. Co. v. C.W. Warthen Co., 240 Va. 457, 460, 397 S.E.2d 876 (1990).  "[C]ourts cannot read into contracts language which will add to or take away from the meaning of the words already contained therein." Wilson v. Holyfield, 227 Va. 184, 187, 313 S.E.2d 396 (1984). The parties' contract becomes the law of the case unless it is repugnant to some rule of law or public policy. Winn v. Aleda Const. Co., Inc.  227 Va. 304, 307, 315 S.E.2d 193, 194 (Va.,1984); Moreover, "language purporting to exclude certain events from coverage will be construed most strongly against the insurer" and in favor of coverage.[29]

**Burden of Proof**:  "[W]hen an insured has shown that his loss occurred while an insurance policy was in force, but the insurer relies upon exclusionary language in the policy as a defense, the burden is upon the insurer to prove that the exclusion

---

[29]Ayers v. Harleysville Mutual Casualty Co., 172 Va. 382, 2 S.E.2d 303 (1930); Accord, Jefferson-Pilot Fire & Casualty Company v. Boothe, Prichard & Dudley, 638, F.2d 670, 674 (1980)(4th Cir. applying Va. law ).

applies to the facts of the case."[30]  See also, <u>Cameron v. USAA Prop. & Cas. Ins. Co.</u>, 733 A.2d 965 (D.C. 1999)("Property insurer had the burden to prove that the loss fell within an exclusion").  "The burden is on [the insurer-Peerless in this case] to prove that the loss falls within an exclusion.  <u>Id</u>. citing, <u>Lang v. F.G. Arwood & Co</u>., 65 A.2d 194, 196 (D.C.1949); <u>New York Life Ins. Co. v. Miller</u>, 65 App. D.C. 129, 134, 81 F.2d 263, 268 (D.C.Cir.1935).

**Contra proferentum**:  A policy is ambiguous if it can be reasonably interpreted in more than one manner. <u>Stephen Randolph Seals v. Erie Insurance Exchange</u>, 277 Va. 558, 862, 674 S.E.2d 860 (2009); see also <u>Resource Bankshares Corp. v. St. Paul</u>, 407 F.3d 631, 636 (4th Cir.2005).  Ambiguities in insurance policies are always interpreted strongly against the insurer and must be construed to effectuate coverage. <u>Joseph P. Bornstein Ltd. v. National Union Fire Ins</u>., 828 F.2d 242, 245 (4th Cir.1987). It is well settled that ambiguous language in an insurance policy should be given an interpretation that grants coverage, rather than one that withholds it. <u>St. Paul Ins. v. Nusbaum & Co</u>., 227 Va. 407, 316 S.E.2d 734, 736 (1984); <u>American Reliance Ins. Co. v. Mitchell</u>, 238 Va. 543, 385 S.E.2d 583, 585 (1989). The same rule applies in the District of Columbia where it has long been "a general rule of construction of policies of insurance ... that any reasonable doubt which may arise as to the meaning or intent of a condition

---

[30]<u>Bituminous Casualty Corp. v. Sheets</u>, 239 Va. at 332 (1990).

thereof, will be resolved against the insurer." <u>United States Mut. Accident Ass'n of the City of New York v. Hodgkin</u>, 4 App. D.C. 516, 523 (1894), *error dismissed,* 17 S.Ct. 1002, 41 L.Ed. 1184 (1897).

**Reasonable Expectations**:  "Since insurance contracts are written exclusively by insurers, courts generally interpret any ambiguous provisions in a manner consistent with the reasonable expectations of the purchaser of the policy." <u>Smalls v. State Farm Mut. Auto. Ins. Co.</u>, 678 A.2d 32, 35 (D.C.1996).  The rationale for the public policy of reasonable expectations as well as the public policy that ambiguities should be resolved against the insurer and in favor of coverage is that the insurance companies write the policies; rarely is there any ability of the insured to negotiate the language contained in the insurance policy; and because the insurance company employs a staff or attorneys and others to script policies which protect the interests of the insurance companies, they should be held to a higher standard.

Here, there is no genuine dispute of any material fact.  (1)  the Plaintiffs had insurance under Builders Risk coverage;  (2)  The Plaintiff had coverage for loss sustained during the construction so long as the loss is not clearly and unambiguously excluded;  (3)  The Insured as part of the project was excavating a basement to a depth of 8-9 feet below the surface of the earth;  (4)  The basement had been excavated and all workers left the site;  (5)  At a time when no one was on the site, soil below the underground footer of the buildings walls failed, and

resulted in the building collapsing into the basement;  (6)  There was no movement or vibration of the earth's surface, with all movement of soil being underground; (7)  as a result of the failure of the soil below the earths surface, the building collapsed;  (8)  Collapse is a covered peril under the Policy.  Based upon these facts Peerless cannot carry the burden of demonstrating that there was any applicable exclusion, which loss is therefore covered under the all risk coverage.

## II.    THE LAW REGARDING "ALL RISK" POLICIES OF INSURANCE

The Policy in issue in this matter  provides in pertinent part as follows:

---

### PERILS COVERED

---

"We" cover risks of direct physical loss unless the loss is limited or caused by a peril that is excluded.  See Vol 1, E 60, at bates page 73.

Under this language any loss that is not excluded is a covered cause of loss, or a covered peril.  Thus, unless the insurer can carry the burden of demonstrating that a loss is excluded, then the loss is covered under this all risk coverage.[31]  See e.g. Ins. Co. of N. Am. v. U.S. Gypsum Co., 678 F. Supp. 138, 141 (W.D. Va. 1988) *aff'd sub nom.* Ins. Co. of N. Am., Inc. v. U.S. Gypsum Co., Inc., 870 F.2d 148 (4th Cir. 1989). An All Risk policy "protects the insured against all loss of or damage to the latter's

---

[31] As will be discussed later, collapse is not excluded and is therefore a covered peril.

property except as to perils and risks excepted specifically from coverage in the

contract itself." <u>Icarom, PLC v. Howard County, Md.</u>, 981 F.Supp. 379 (D.Md.,

1997), *citing*, <u>Arcon Corp. v. Liberty Mut. Ins. Co.</u>, 591 F.Supp. 15, 21

(M.D.Tenn.1983), *citing* <u>Clay v. Sun Ins. Office, Ltd.</u>, 363 U.S. 207, 214, 80 S.Ct.

1222, 1227, 4 L.Ed.2d 1170 (1960) (dissenting opinion).

The nature of the All Risk policy was succinctly explained by the Court in

<u>Vision One, LLC v. Philadelphia Indem. Ins. Co.</u>, 174 Wash. 2d 501, 276 P.3d 300

(2012) in which the Court noted that:

> Property insurance policies generally fall into two categories: named-peril and all-risk. In insurance parlance, "perils" ... refers to fortuitous, active, physical forces such as lightning, wind, and explosion, which bring about the loss. Named perils' or 'specific perils' policies provide coverage only for the specific risks enumerated in the policy and exclude all other risks." All-risk policies, on the other hand, "provide coverage for all risks unless the specific risk is excluded. All-risk policies generally allocate risk to the insurer, while specific peril policies place more risk on the insured. [U]nder an 'all risk' policy, the insurer bears the risk that a catastrophe not mentioned in the policy will occur; in a 'specified peril' policy, the insured bears that risk.

<u>Vision One, LLC v. Philadelphia Indem. Ins. Co.</u>, 174 Wash. 2d 501, 513-14, 276

P.3d 300, 306 (2012)(internal citations omitted). Since coverage under "all risk"

policies is measured by the reach of exclusions, whether or not an insurer has met its

burden of proof on exclusions is often critical. Here, Peerless failed to meet its

burden.

III.   **SINCE THERE WAS NO MOVEMENT OF SOIL AT THE "EARTH'S SURFACE," THE EARTH MOVEMENT EXCLUSION IS INAPPLICABLE**

The Policy exclusion relied on by Peerless defines the term "Earth Movement" as *"any movement or vibration of the <u>earth's surface</u> . . ." (Emphasis Supplied)*. However, there is no evidence in this case that there was "any movement or vibration of the earth's surface". Rather, the only evidence before the Court, all of which is undisputed, was that on July 10, 2014, following the excavation of the crawl space of the Row House at a depth of approximately eight to nine feet below the earth's surface, the east wall of the building failed and collapsed into the excavated area in the newly excavated basement resulting in a loss to the Insured. While the trial Court held that "surface of the earth" also included movement of soil below the surface of the earth, it incorrectly construed the policy and held that the "earth's surface" included some amount of soil at an undefined and unspecified depth below the earth's surface. Such a holding begs the question—what is the upper layer of the earth and how far does it extend below the earths surface?

Significantly, Peerless wrote the policy and could have chosen different words, or could have chosen to define the terms "earth" or "surface." Alternatively, it could have stated that Earth Movement included any movement of the earth, whether at or below the surface. It did not. The trial court in reaching its decision improperly re-

wrote the policy to define earth's surface to include movement of soil below the

earth's surface.  The trial Court ruled that:

> Using the plain meaning of these words, it is evident that while the
> movement that caused the east wall's collapse occurred below grade
> (in the basement, below the ground level of the structure), it still
> involved movement of the earth surface (the uppermost layer of the
> soil and clay).[32]

While the Court was correct that the undisputed testimony was that any movement of

the soil occurred well below the ground level of the structure, it improperly re-wrote

the Policy so that the term "earth's surface" included not only "the uppermost layer of

the soil and clay" but also earth movement that occurred only at depths below surface

grade.  Such a construction ignores the common sense definition as well as the

dictionary definition of earth's surface which does not include movement below or

under the earth's surface.

In this instance Peerless provided a definition of "earth movement" which the

Court must apply.[33]  That definition included the term "surface" without any further

definition of the same.  It has long been held that words used in a policy which have

no definition must be given their usual, common, and ordinary meaning." *Firemen's*

---

[32] The absurdity of this argument can be demonstrated by substituting water for
earth.  While clearly one swimming at the waters surface would not included one
swimming 10 feet below the water.  No one could possibly believe that a person 10
feet below the water would be considered to be at the waters surface.
[33]   Wilson v. Holyfield, 227 Va. 184, 187, 313 S.E.2d 396 (1984).("[C]ourts
cannot read into contracts language which will add to or take away from the
meaning of the words already contained therein.")

_Insurance Company of Washington, D.C. v. Kline & Son Cement Repair, Inc., et al._,
474 F.Supp.2d at 798 (2007) (citing <u>D.C. McClain, Inc. v. Arlington Cnty.</u>, 249 Va.
131, 135, 452 S.E.2d 659 (1995)) ("Words that the parties used are normally given
their usual, ordinary, and popular meaning."). To determine the common and ordinary
meaning, the Court looks to a reputable dictionary[34] and considers a term's common
usage. <u>See</u> <u>Centennial Broad., LLC v. Burns</u>, Case No. 6:06cv00006, 2006 WL
2850640, at 11, 2006 U.S. Dist. LEXIS 70974, at 34 (W.D.Va. Sept. 29, 2006) ("Its
ordinary and plain meaning can be gleaned by resort to dictionary definitions and
common usage.").  The exclusory language utilized by Peerless is movement at the
"Earths surface."  Here the definition of "surface" comes into play:

> **Surface**: according to Miriam Webster Online Dictionary Definition
> (using the full definitions) of "surface" means (1) the exterior or
> upper boundary of an object or body <on the surface of the water>
> <the earth's surface>  ; (2) a plane or curved two-dimensional locus
> of points (as the boundary of a three-dimensional region) <plane
> surface> <surface of a sphere>  ; or (3)( a) the external or superficial
> aspect of something <trouble lurks below the surface>( b) an
> external part or layer <sanded the rough surfaces

Moreover, the definition urged by Peerless in its memorandum[35] and accepted by the
District Court renders the policy hopelessly ambiguous with respect to what the lower

---

[34] In <u>Nationwide Mut. Ins. Co. v. Overlook, LLC</u>, 785 F. Supp. 2d 502, 518-19
(E.D. Va. 2011) the Court looked to Miriam Webster online dictionary.
[35]    Peerless misquotes the dictionary definition and quotes the "simple"
definition, and not the "full" definition.  The full definition makes clear that earth's
"surface" embraces only the "external or superficial aspect of" the earth.

limits of the earth's surface would be.  In such event, "it is incumbent upon the insurer to employ exclusionary language that is clear and unambiguous." <u>Granite State Insurance Company, et al v. Nathan Bottoms, et al.</u>, 243 Va. at 233, 415 S.E.2d 131 (1992) (quoting <u>Am. Reliance Ins. Co</u>., 238 Va. at 547, 385 S.E.2d 583).

In this case, every one of the witnesses testified that there was no movement of earth at or above the ground, at or above the grade, or at the surface of the earth.  For example,

- **Peerless FRCP 30(b)(6) representative Jonathan Lawlee**, testified that the insurer was "not aware of any movement of the soil at the **surface of the earth**" and that the earth movement "happened under the wall" and that the movement of earth was all "below the grade."[36]  Such a party admission is fatal to its argument that there was movement at the earth's surface.

- **Mr. Kates**, the expert for Peerless, testified that there was no movement at the surface of the earth and that all the soil movement occurred below grade.[37]

- **Michael Watson**:  Mr. Watson is the principal of Taja came to the site just after the wall failure had occurred and testified that everything related to the excavation was below grade and below the surface of the earth.[38]  See also the affirmation of Michael Watson filed along with the Opposition to Peerless

---

Superficial is defined as "lying on, not penetrating below, or affecting only the surface."

[36] See deposition of Peerless Insurance Company taken pursuant to FRCP 30(b)(6) with Jonathan Lawlee as the deponent, J.A. 2, p. 572, at pages 51-53.

[37] Zachary Kates, J.A. 2, p. 572, at page 57 lines 14 to page 58 line 6. Page 58 lines 15-17.

[38] Michael Watson J.A. 2, p. 572 at pages 78-79

Motion for Summary Judgment.[39]

- **Brian Brown**:  Mr. Brown is the principal of Nextgen and the owner of the adjoining property who came to the site just after the wall failure had occurred and testified that:  the dirt that moved was 100% below grade, there was nothing above grade the brick in the entire house was below grade, and the dirt they removed was below grade.[40]

- **Dennis Anibaba**:  Is the engineer who drew up the plans and who came to the site just after the wall failure had occurred and testified that:  The excavation that was taking place was all below the existing grade, and that the dirt that moved underneath the footers and that it was all below the surface of the earth.[41]

Accordingly, the language of the definition that limits the exclusion used by Peerless i.e."Earth movement" means any movement or vibration of the **earth's surface** (other than "sinkhole collapse") . . .[42] (Emphasis Supplied) should be narrowly construed and be dispositive.  Additionally, if the term used is ambiguous this Court is required to construe the ambiguity in favor of coverage.  The trial Court's statement that the earth's surface includes some amorphous undefined "upper layer of soil and clay" fails to construe the language narrowly as required by law.

Unquestionably, Peerless could have used language to make clear that it intended to exclude not only earth movement at the earth's surface, but to also exclude

---

[39] J.A. 4, pp 1306 – 1308.
[40] Bryan Brown J.A. 2, p. 453, at page 32.
[41] Dennis Anibaba, J.A. 1, p. 355, at pages 52-53.
[42] Clearly a sinkhole involves movement at the surface since its main characteristic is a sinking of the earth at the surface.

earth movement below the earth's surface. Its inclusion and/or exclusion of language should be deemed to be deliberate. In fact, the earth movement exclusion in this policy varies from language Peerless includes in its standard property coverage policy in the earth movement exclusion,[43] which excludes earth movement caused by "water under the ground surface." In Fed. Ins. Co. v. Olawuni, 539 F. Supp. 2d 63, 65 (D.D.C. 2008) the Court found the following exclusion to be unambiguous:

> "Movement of land" includes but is not limited to any movement of earth or land, whether at the surface or below the surface and includes any movement of earth to a higher or lower level, landslide, mud flow, mud slide, shearing, rising, settling, shifting or shrinking.

Unlike the policy here, the "movement of land" exclusion in Olawuni is not restricted to "movement of the earth's surface" and Olawuni also makes clear that it also applies "below the surface." Peerless' failure to use this or other similar and succinct language is dispositive of this case and Taja ought to prevail.

The trial Court committed error when it adopted Peerless argument that the earth's surface really includes events below the earth's surface. However, as noted above, at best all that is accomplished was to create an ambiguity. Since ambiguities in policies are always construed against the insurer and in favor of coverage, their arguments are insufficient to defeat Plaintiffs motion for summary judgment on this issue. See Joseph P. Bornstein Ltd. v. National Union Fire Ins., 828 F.2d 242, 245

---

[43] The standard Peerless policy is attached at the previously filed J.A. 3, p. 876 , with the earth movement exclusion at J.A. 3, p. 1022.

(4th Cir.1987) (ambiguities in insurance policies are always interpreted strongly

against the insurer and must be construed to effectuate coverage.); accord, St. Paul

Ins. v. Nusbaum & Co., 227 Va. 407, 316 S.E.2d 734, 736 (1984) ("It is well settled

that ambiguous language in an insurance policy should be given an interpretation that

grants coverage, rather than one that withholds it."). Moreover,  "Where an insurance

policy is susceptible of two constructions, one of which would effectuate coverage

and the other not, it is the court's duty to adopt that construction which will effectuate

coverage." Mollenauer v. Nationwide Mut. Ins. Co., 214 Va. 131, 132, 198 S.E.2d

591, 592 (1973) (per curiam).  "Language is ambiguous when it may be understood in

more than one way or when such language refers to two or more things at the same

time." Salzi v. Virginia Farm Bureau Mut. Ins. Co., 263 Va. 52, 55–56, 556 S.E.2d

758, 760 (2002).

Moreover, language of the type similar to that utilized by Peerless in this policy has

been construed by at least one other court as ambiguous.  In Powell v. Liberty Mut.

Fire Ins. Co., 127 Nev. 156, 252 P.3d 668 (2011) the Court construed an earth

movement exclusion which included as one of the list of examples "mine subsidence."

Initially the court noted that Earth movement exclusions were historically included in

insurance policies to protect insurance companies from having to pay out on policies

when a catastrophic event caused damage to numerous policyholders.  Id at 672-673.

The Court went on to note that "In considering earth movement exclusions, other

36

jurisdictions have concluded that there is often an ambiguity as to what type of damage earth movement exclusions apply because such exclusions typically only list naturally occurring events in their definitions of what constitutes earth movement, but earth movement can be caused by unnatural events as well." Id. at 673, citing, Sentinel Associates v. American Mfrs. Mut. Ins., 804 F.Supp. 815, 818 (E.D.Va.1992). The court went on to find the exclusion ambiguous when included in an insurance policy listing mine subsidence and earth sinking, rising, and shifting as examples of earth movement. The court noted that listing natural events with un natural events rendered the exclusion ambiguous as to what earth movement was when it was not a type of widespread calamitous event, and, thus, exclusion was to be construed against insurer since earth movement exclusions typically only listed naturally occurring events in their definitions of what constituted earth movement, even though earth movement could also be caused by unnatural events. The court noted that the insurer's exclusion was even less clear than most earth movement exclusions, in that not all examples listed were naturally occurring events, and policy's "settling clause" seemed to support interpretation that earth movement exclusion only applied to naturally occurring events, instead of clarifying that it applied to both naturally occurring events and man-made events. In this case the policy includes both the earth movement exclusion and the settling clause which rendered the exclusion ambiguous in Powell. See definition of "Earth movement" which includes reference to "sinking, rising or shifting.

37

Here all that Peerless does is provide an alternative explanation for the term "earths surface" which, at most, creates an ambiguity in the exclusion. However, the attempts by Peerless to even show an ambiguity are strained and unreasonable.

## IV.  THE FAULTY WORKMANSHIP EXCLUSION DOES NOT APPLY SINCE THE ACTUAL CAUSE OF THE COLLAPSE IS NOT KNOWN BY PEERLESS WHICH CANNOT MEET ITS BURDEN OF PROVING THE CAUSE.

Here, the facts are again uncontested and undisputed. The Plaintiffs excavated a basement to a depth of approximately 9 feet.[44] Because the soil had a high clay content, the excavations remained stable.[45] This is why on 8 prior occasions the same procedure was followed, without incident, and without loss. Further, Peerless' expert had no idea what actually caused the movement of the soil that resulted in the collapse of the building.

Peerless, who has the burden on the issue, did not and cannot establish the cause of the soil failure[46] below the wall which resulted in the collapse other than to assert without supporting evidence that the over excavation caused an unstable condition

---

[44] Affirmation of Michael Watson J.A. 4, p. 1307 at ¶¶ 1-4.  See also deposition testimony above.

[45] Affirmation of Michael Watson J.A. 4, p. 1307 at ¶ 7.  See also deposition testimony above.

[46] If movement of the soil underground is found to be excluded by the exclusion of earth movement at the earths surface, then this exclusion would arguably apply to exclude the claim.  However, since the underground movement of soil is not excluded, this exclusion would also be inapplicable.

which resulted in the subsurface soil movement and collapse.  Peerless has, therefore, failed to trigger the faulty workmanship exclusion.  Cameron v. USAA Prop. & Cas. Ins. Co., 733 A.2d 965 (D.C. 1999)("Property insurer had the burden to prove that the loss fell within an exclusion").[47]

Likewise, it is not disputed that the events involving the failure of the soil below the walls caused a collapse.  Collapse is not an excluded peril under this policy, although it is excluded under other Peerless policies.  Here, Peerless relied exclusively upon its engineer to establish the cause of the collapse.  However, its engineer does not state that the excavation caused the collapse, but instead took the position that the over excavation lead to an "unstable condition" and that the failure of the soil which had been rendered unstable caused the collapse.  With this testimony by its own expert,  Peerless cannot possibly have met its burden of showing that the loss is excluded from coverage.   In its denial letter[48] Peerless states the following with respect to its investigation and the opinion offered by its engineer:

> Our investigation and evaluation of the policy provisions reflects that the building sustained damage during the course of renovation

---

[47]   The burden is upon the insurer to prove that the exclusion applies to the facts of the case.  Sentinel Associates v. American Manufacturers Mutual Insurance Company, 804 F.Supp 815 (1992)  Accord, Fuisz v. Selective Ins. Co. of Am., 61 F.3d 238, 242 (4th Cir. 1995) (applying Virginia law) (emphasis added). Accord, Bituminous Cas. Corp. v. T.A. Sheets, 389 S.E.2d 696, 698 (Va. 1990)( . . . [e]xclusionary language in an insurance policy will be construed most strongly against the insurer and the burden is upon the insurer to prove that an exclusion applies.)

[48] J.A. 1, p. 278.

or construction caused by one or more of the following policy exclusions: defects, errors or omissions in design, specifications, construction or workmanship, planning, grading, renovation, remodeling or repair, and earth movement. Our engineer's determination of the cause of this loss is as follows:

The loss was a direct result of the faulty work sequence performed during excavation of the basement and underpinning of the brick bearing walls. . . . In the case of 117 New York Avenue, the entire basement was excavated at once. **The excavation was performed almost to the face of the wall and extended below the bottom of the base of the wall. This left the portion of soil below the wall and adjacent to the excavation in an unstable condition**. *It is our opinion that the soil below the wall failed causing the wall to move downward to the base of the excavation (approximately 2'-0") and move inward into the excavation (approximately 1'-0").*

Moreover, Peerless in its denial letter concedes the issue by claiming:

[T]he result of digging out an entire basement without sequencing the construction and underpinning as you go" **could** "create an unstable condition" and "**may** result in a collapse. [49] (Emphasis Supplied)

Significantly, Mr. Kates, another of Peerless' experts, states that he does not know why the soil failed or the actual cause of the collapse.

Q: Now when you say soil failure, can you show me where you believe the soil failed on this picture . . .
A: So I believe that the soil failed in that area circled.
    . . .
Q: All right. Now, what would cause a collapse to occur after everybody left, its just sitting there? Why would it suddenly collapse?
A: I don't have an answer for you.
Q: No idea? Okay. . . .[50]

In this case, without knowing why the soil fell out from below the walls and why the collapse occurred, Peerless cannot meet its burden of establishing application

---

[49] Zachary Kates, J.A. 2, p. 497, at page 50 lines 10-15.
[50] Zachary Kates, J.A. 2, p. 497, at pages 46 lines 3-8 and lines 14-18.

of any exclusion.  It cannot establish that the faulty workmanship caused the collapse nor that "earth movement" as described in the policy caused the collapse.  Despite this, and based upon the previous error in finding that soil movement below the wall would be excluded, the trial Court committed error in granting summary judgment to the wrong party.

## V.    PEERLESS' CLAIM THAT THE FAULTY WORKMANSHIP CLAUSE EXCLUDES COVERAGE IGNORES THE ENSUING LOSS CLAUSE

The trial Court erred when it re-wrote the ensuing loss exception to the faulty workmanship exclusion.  The Court held that the

> The Court holds that the Policy's Workmanship exclusion is applicable because the undisputed acts, errors, and omissions of Plaintiff, namely, the excavation and failure to install necessary underpinning to secure the building's foundation, caused the east wall's collapse.  Furthermore, the ensuing loss exception fails to restore coverage because no other independent act contributed to the collapse other than the Plaintiff's excluded conduct.

The Court erred in this holding for several reasons.  First, the policy language does not require there to be an independent act which contributed to an ensuing peril. Moreover, neither the Supreme Court of Virginia nor this Court have held the same under the language found in this policy.  The language is simple and clear and provides that:

> "We" do not pay for loss or damage if one or more of the following exclusions apply to the loss. **But if loss by a covered peril results, "we" do pay for the resulting loss.**

*    *        *

b. Defects, Errors, and Omissions -- "We" do not pay for loss caused by an act, defect, error, or omission (negligent or not) relating to:

(1) design, specifications, construction, or workmanship

All that is required to trigger the clause which restores coverage is that a loss by a covered peril result. Here even Peerless in its deposition agreed that the peril of collapse was not excluded, and was therefore covered. Moreover, having argued that the collapse was caused by the over excavation, and given the fact that it followed in time after the work, there is no question it is a resulting peril. An independent act is not required and it was error for the trial Court to re-write the policy to include this requirement.

Here it is not disputed that the alleged faulty workmanship did not cause the Plaintiffs' damage. Instead, the proximate cause of the loss to the Plaintiff was the collapse of the east wall. Had no collapse occurred, there would not have been any damage to the Plaintiffs from the alleged faulty workmanship (the "over excavation"). There is also no dispute that while Peerless excludes the loss related to the faulty workmanship, they further agreed to provide coverage is a covered peril resulted and agreed to pay for damage related to the resulting peril. Here, the collapse was the resulting peril. Moreover, Peerless has an obligation to pay whether the collapse was due to the faulty construction, or whether it was not due to the faulty construction. Here, if the collapse either resulted from the faulty workmanship, the resulting peril

clause requires Peerless to pay for the loss from the collapse. Alternatively, if the collapse did not result from the faulty workmanship, the faulty workmanship exclusion would not apply and the collapse is covered as an independent peril under the policy.

It is not disputed that the Plaintiff did not sustain any loss from the over excavation. Following the excavation, the building was standing and ready for underpinning. Plaintiffs had performed the same excavation at least 8 times prior and no loss ever resulted. When the workmen left after completing the excavation, no loss or harm had occurred. The loss resulted from the collapse which is either (1) covered under the ensuing peril clause if it resulted from the faulty workmanship; or (2) is covered and not excluded by faulty workmanship if the collapse did not result from the faulty workmanship. In either case there is coverage.

Peerless attempts to complicate application of the Faulty Workmanship Exclusion, and the Ensuing Loss clause, which grants coverage for covered perils and which results from the Faulty Workmanship. To do this, Peerless attempts to have this Court add language to the exclusion which simply is not there and which this Court cannot add in under clear precedent. The lead-in language for Section 3 exclusions contains no anti-concurrent causation language and adds back coverage for resulting losses (the "Resulting Loss" clause):

> "We" do not pay for loss or damage if one or more of the following exclusions apply to the loss. **But if loss by a covered peril results, "we"**

**do pay for the resulting loss.**

\*     \*     \*

b.    Defects, Errors, and Omissions -- "We" do not pay for loss caused by an act, defect, error, or omission (negligent or not) relating to (1) design, specifications, construction, or workmanship . . .[51]

Even if this Court finds the clause was triggered, however, it is also clear that the resulting loss provision makes clear that all damages that resulted from the collapse are covered. That provision provides that:

"We" do not pay for loss or damage if one or more of the following exclusions apply to the loss. **But if loss by a covered peril results, "we" do pay for the resulting loss.**

Application of this provision makes clear that even if the excluded peril of faulty workmanship (the over-excavation) caused the loss, that if loss by a covered peril (collapse) results, that Peerless pays for that damage. Here there is no question that collapse is a peril. In fact, in its standard property policy collapse is an excluded peril. Moreover, Peerless testified not only that collapse was a covered peril, but also that the collapse resulted from the faulty workmanship. Peerless testified as follows:

Q:  What was the faulty workmanship in the opinion of Liberty Mutual and Peerless supporting this denial?

A:  The result of the faulty workmanship is due to the excavating and the underpinning of the brick bearing walls at the basement.

Q:  Okay. And what resulted as a result of the –what you say is faulty workmanship?

---

[51] See policy at J.A. 1, p. 90 at bates page nos. 75-76 (emphasis supplied).

A:  The soil below the walls became unstable and they collapsed in – downward.[52]

\*      \*      \*

Q:  So faulty workmanship and underpinning leads to collapse.  Collapse is not an excluded loss under this policy, is it, Mr. Lawlee?

A:  I'm just looking now.  Right it says we do not – we do not pay for loss or damage if any one or more of the following exclusions apply to the loss, but if loss of a covered peril results, we do pay for the resulting loss.  But the – the entire loss is the – from the earth movement and from the – from the errors and omissions from the faulty design workmanship.

Q:  Well that faulty design lead to the movement of the earth and then resulted in a collapse of the building right?

A:  The faulty workmanship and the earth movement caused the building to collapse.

Q:  Okay.  Collapse is not an excluded peril under this policy is it?

A:  No., there is no collapse exclusion.[53]

Peerless could have excluded collapse as a peril, but did not.[54]  No further inquiry is necessary as to whether the peril is separate, or independent as Peerless suggests.  The Virginia Supreme Court in Fidelity and Guaranty Insurance Underwriters, Inc. v. Allied Realty Co., 238 Va. 458 (1989) did not engage in such linguistic gymnastics.[55] The Court simply asked was the resulting loss caused by a peril, which was not

---

[52] Jonathan Lawlee deposition, J.A. 2, p. 572 , at page 83 line 12 to page 84 line 1.

[53] Jonathan Lawlee deposition, J.A.. 2, p. 572 at page 85 line 3 to page 86 line 2.

[54] In fact, in the standard property policy issued by Peerless, and found at J.A. 3, p. 875, with the collapse exclusion being attached at J.A. 3, p. 1021.

[55]  See also Vision One, LLC v. Philadelphia Indem. Ins. Co., 174 Wash. 2d 501, 276 P.3d 300 (2012); and In Selective Way Ins. Co. v. Nat'l Fire Ins. Co. of Hartford, 988 F. Supp. 2d 530, 538 (D. Md. 2013), appeal dismissed (May 23, 2014).

excluded. There the answer was yes. Here, to the answer is yes. If the faulty workmanship (the over excavation) exclusion is triggered, then the collapse, which resulted is not excluded, and all resulting damages are covered. Despite the Virginia Supreme Court's admonition not to rewrite policies, Peerless asks this Court to do so. First, Peerless attempts to have this Court read only part of the exclusion in arguing that since the collapse was "caused by" the faulty workmanship (over excavation), it is excluded. It omits to point out, however, the ensuing loss clause. Here, the lead in language provides that:

> "We" do not pay for loss or damage if one or more of the following exclusions apply to the loss. **But if loss by a covered peril results, "we" do pay for the resulting loss.**

Accordingly, under the very clear wording of this policy, if the faulty workmanship exclusion is triggered, then the policy would not respond to require Peerless to pay for the faulty excavation, but would require a finding of coverage "if loss by a covered peril (collapse) results" in which case Peerless has an obligation to "pay for the resulting loss."

Here, Plaintiff is entitled to Summary Judgment on the Faulty Workmanship argument advanced by Peerless. If Peerless argues that they don't know what caused the movement of subsurface soil or the collapse, then the exclusion is not triggered. If they argue that the over excavation resulted in subsurface earth movement and then a collapse, then damage to the building was "resulting loss." In either case, the

46

Plaintiffs are entitled to summary judgment.

## **CONCLUSION**

The "Earth movement" exclusion does not apply because "Earth movement" is a phrase with a special meaning under the policy that only includes movement of "the earth's surface." Any other definition of "Earth movement," even a plain meaning one, is forbidden because the insurer chose to specially define the term. Both parties are stuck with this definition. This is an all-risk policy, where all perils are covered unless they are expressly excluded. Therefore, a plain reading of the policy, including the definition of earth movement, means that subsurface earth movement is covered under the policy. The faulty workmanship exclusion does not apply where a covered cause of loss resulted from faulty workmanship. Thus ensuing cause of loss is either the subsurface earth movement or collapse, neither of which are excluded and therefore both of which are covered under the policy. Wherefore, the Plaintiff is entitled to Summary Judgment against Peerless.

WHEREFORE, it is respectfully requested that this Court reverse the District Court's order and enter summary judgment as a matter of law in favor of the Plaintiffs' as to liability. Alternatively, if for any reason the Court finds that Summary Judgment is improper at this stage of the proceeding, it is requested that the Court reverse the judgment of the District Court and remand the case for further

47

proceedings together with such other and further relief as to the Court may deem appropriate.

**ORAL ARGUMENT IS RESPECTFULLY REQUESTED**

Respectfully submitted,

TAJA INVESTMENTS LLC
TAJA CONSTRUCTION & REHAB, INC.
a/k/a TAJA CONSTRUCTION LLC
By Counsel

/s/ C. Thomas  Brown, Esquire
C. Thomas Brown, Esquire
Va. State Bar No. 23743
Glenn H. Silver
Va. State Bar No. 15722
*Counsel for Plaintiffs*
SILVER & BROWN
10621 Jones Street, Suite 101
Fairfax, Virginia 22030
(703) 591-6666
(703) 591-5618  - Facsimile
tom@virginia-lawyers.net
ctbghs@aol.com

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 16-1854        **Caption:** Taja Investments, et al. v. Peerless Ins. Co.

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [✓] this brief contains _____10,775_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [ ] this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [✓] this brief has been prepared in a proportionally spaced typeface using
   MS Word 2010 _____ [*identify word processing program*] in
   Times, 14 point _____ [*identify font size and type style*]; **or**

   [ ] this brief has been prepared in a monospaced typeface using
   _____ [*identify word processing program*] in
   _____ [*identify font size and type style*].

(s) C. Thomas Brown _____

Attorney for appellants _____

Dated: 9/19/2016 _____

# CERTIFICATE OF SERVICE

I certify that on  9/19/2016            the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

ROMAN LIFSON
EDWARD F. STEPHENS
CHRISTIAN & BARTON, LLP
909 East Main Street, Suite 1200
Richmond, VA 23219
(804) 697-4164

/s/ C. Thomas Brown
_____
Signature

9/19/2016
_____
Date